# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARLETTA L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 73 |
| v. ) | |
| ) | Magistrate Judge |
| ANDREW SAUL, Commissioner of ) | Maria Valdez |
| Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Carletta L.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 21] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I.  PROCEDURAL HISTORY

Plaintiff was born on November 8, 1966. On March 19, 2015, she filed a claim for DIB, alleging disability since January 1, 2011 due to diabetes, hypertension, asthma, bilateral carpal tunnel syndrome, peripheral neuropathy, and psychological impairments. Her date last insured ("DLI") was December 31, 2013, and thus she was required to establish that she was disabled before that date. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 15, 2017. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert also testified.

On September 27, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II.  MEDICAL HISTORY

Plaintiff's brief discusses the following medical records. On October 18, 2010, Plaintiff was seen by Dr. Jill Clay, a primary care physician, for asthma follow-up. The visit notes state that her mild intermittent asthma symptoms were exacerbated by the change in weather, but that she had not had any significant asthma episodes

2

or emergency room visits since her last appointment. Plaintiff's other active problems included benign essential hypertension and poorly controlled diabetes. In November 2010, Plaintiff was seen by rheumatologist Dr. Shri Agrawal for trigger finger of her thumb, and she received an injection.

Plaintiff went to primary care physician Dr. Samina Chaudhry on March 9, 2011, after experiencing low back pain for three days. She reported that Advil gave her relief, and the pain was worse with walking or sitting, but she had no other symptoms, such as numbness, tingling, or radiating pain. On palpation, Plaintiff's lower back exhibited tenderness of the right paraspinal region and muscle spasm. Dr. Chaudry stated that there were no recommended limitations or risks, and Plaintiff was not recommended to lose weight. Instead, it was suggested that she begin regular exercise, including exercises for the trunk and home range of motion exercises for the lower back.

Three months later, she saw primary care physician Dr. Evelyn Bell due to irregular periods for two months. Dr. Bell also discussed Plaintiff's diabetes at this visit, expressing concern over Plaintiff's lack of compliance, *i.e.*, she had not been taking her diabetes medications regularly, she did not comply with dietetic restrictions, and she was not exercising regularly. Plaintiff believed that her medications interfered with her menses, but Dr. Bell explained that was not true, and she warned Plaintiff of the risk of complications due to her uncontrolled diabetes. Plaintiff also had elevated systolic blood pressure, and Dr. Bell stressed

3

the importance of compliance with her hypertension medication. Plaintiff had not been suffering from any asthma symptoms around this time.

In August 2014, after her DLI, Plaintiff was diagnosed with chronic major depressive disorder and adjustment disorder, with mixed anxiety and depressed moot, and she was prescribed antianxiety medication. The same month, Plaintiff went to the emergency room after a car accident. She suffered a non-displaced fracture of a finger and required physical therapy for lower back pain. Her back pain continued through 2014, and she also had neuropathy of the wrist consistent with moderate carpal tunnel syndrome. Plaintiff had more episodes of trigger finger in various digits, often requiring injections, in December 2014, January 2015, April 2015, October 2015, November 2015, and July 2016.

State agency consulting physician Dr. Vidya Madala, reviewing Plaintiff's claim at the initial level in August 2015, opined that Plaintiff had no severe impairments but had non-severe impairments of diabetes mellitus and hypertension before the DLI. This conclusion was affirmed at the reconsideration level by Dr. Richard Bilinsky.

### III. PLAINTIFF'S STATEMENTS AND TESTIMONY

In a function report Plaintiff completed in July 2015, she stated that her ability to work was limited in part because her diabetes made her dizzy, light-headed, and sometimes confused. Her impairments allegedly caused her to dress very slowly and stumble while getting ready, she had to bathe slowly and carefully, her arms hurt or were tired while lifting them to care for her hair, and she had to

4

sit still a lot because of her dizziness and asthma. She was unable to do any yard work but she prepared her own meals on a daily basis for thirty minutes to an hour at a time; she could perform household chores such as laundry and cleaning, although she needed help cleaning the bathroom; and she left the house approximately three days a week and shopped for necessities in stores once or twice a month.

At the 2017 ALJ hearing, Plaintiff testified that during the relevant time frame, her diabetes and asthma were the most bothersome impairments, and neither was well-controlled even though she claimed she used all of her medications as directed. However, she also stated that one of her insulin medications caused frequent painful urinary tract infections and pain in her uterus and stomach, and thus she took insulin only on and off. She experienced dizziness from her diabetes as much as four or five days a week, she passed out "[l]ightly," (R. 43), and peripheral neuropathy caused by the diabetes caused "[a] little tingling" in her fingers and toes. (R. 50.) Diabetes also caused confusion, making Plaintiff lose focus when she was working, and sometimes she would need to repeat herself when talking to a supervisor. Plaintiff stated that she was fired from several full-time temporary administrative assistant jobs because she missed work due to not feeling well.

Plaintiff estimated that prior to her DLI, she could walk two blocks before experiencing stomach cramps and asthma, and lift possibly five or ten pounds. While at home, she would cook, watch television, do light chores, attend church once

a week, run errands, and attend doctor's appointments. On occasion, her husband would have to help her get dressed.

### IV.  ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 1, 2011 through her DLI of December 31, 2013. At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes, hypertension, asthma, bilateral carpal tunnel syndrome, and peripheral neuropathy, and a non-severe impairment of depression. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a listed impairment. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the following limitations: frequent handling of items bilaterally with her upper extremities, and frequent bilateral fingering with her upper extremities; never climbing ladders, ropes, or scaffolds, but frequently climbing ramps and stairs; never working at unprotected heights or around moving mechanical parts; only occasional exposure to dust, odors, fumes, and other pulmonary irritants; and only occasional exposure to extreme cold or extreme heat.

At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work as an administrative assistant, leading to a finding that she is not disabled under the Social Security Act.

6

## **DISCUSSION**

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

8

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's improperly evaluated her RFC for several reasons. First, she complains that the ALJ did not explain the evidentiary basis for limiting Plaintiff to frequent, rather than occasional, fingering and handling. As evidence of her greater limitation, Plaintiff points to her trigger finger injections; her need to dress and bathe slowly and carefully, sometimes needing assistance to dress; tingling in her fingers and toes; arm fatigue when they were elevated while doing her hair; and difficulty with tasks such as opening jars and picking up a pen due to finger pain.

Substantial evidence supported the ALJ's fingering and handling RFC determination. The ALJ noted that there was no medical evidence of Plaintiff's

9

specific impairments prior to her DLI, and although there was evidence of a carpal tunnel diagnosis before December 31, 2013, nothing in the record showed that she had received any particular treatment for it, or that it caused her any functional limitations.

The only medical opinions in the record related to function were those of the agency consultants, who found no limitations. The ALJ nevertheless limited Plaintiff to frequent handling because he credited Plaintiff's allegations of pain in her extremities despite the lack of medical evidence, and his RFC determination was proper and supported by substantial evidence. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) ("[T]he ALJ gave full credit to [the plaintiff's] reports of pain and functional limitations in assessing her residual functioning capacity. It was because of and not in spite of [the plaintiff's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record."); *see also McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 881 (N.D. Ill. 2018) (finding no evidentiary deficit or improperly drawn medical conclusions where the ALJ's RFC determination was more restrictive than the medical opinions in the record); *Cabrera v. Astrue*, No. 10 C 4715, 2011 WL 1526734, at *12 (N.D. Ill. Apr. 20, 2011) (concluding the ALJ did not err when he did not merely adopt the agency opinions that there were no restrictions, but credited the plaintiff's testimony and modified the RFC to frequent instead of constant handling).

Plaintiff offers no evidence suggesting that the RFC limiting her to frequent handling did not account for all of her limitations during the relevant time. Her

10

function statement that she experienced fingering limitations when opening jars or picking up small objects expressly asserts that the difficulties stemmed from her car accident, which occurred months after her DLI, and all but one of her trigger finger injections postdated her DLI. Although a past impairment may sometimes be diagnosed retrospectively, contemporaneous corroboration is "usually" required; Plaintiff has not shown that her trigger finger is the type of impairment with a "well-understood progression" that would allow a physician to extrapolate her condition prior to December 31, 2013. *See Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006).

    Next, Plaintiff argues that the ALJ lacked any basis for finding that she could perform light work, which includes the ability to lift up to twenty pounds occasionally and has no limitations on standing or walking throughout the workday. Plaintiff believes that in forming the RFC, the ALJ should have more fully considered the effects of her dizziness, stated inability to walk more than a few blocks or lift more than ten pounds, tingling in her fingers and toes, fatigue from washing her hair, finger pain, and reported pain in her abdomen and extremities. According to Plaintiff, because the State agency medical opinions found no severe impairments, but the ALJ stated that she had five, then he "could not have reasonably relied on those opinions to support the conclusion that [Plaintiff] could lift up to 20 pounds occasionally and had no standing and walking restrictions." (Pl.'s Br. at 8.) The Court disagrees. The fact that an impairment is found to be severe has no bearing on whether it results in any significant functional limitation.

11

*See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) ("The Step 2 determination is a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a Plaintiff's basic activities.") (citation and internal quotation omitted).

Plaintiff's testimony that she suffered dizziness, numbness, tingling, and pain was adequately addressed by the ALJ. In his RFC analysis, the ALJ was mindful of the need to explore only those limitations present prior to Plaintiff's DLI, and substantial evidence supported his conclusions. With respect to her alleged dizziness, the ALJ noted that Plaintiff never sought treatment for it or even reported it to a practitioner prior to her DLI, and none of the physical examinations in the record show any abnormal findings in neurological functioning, balance, gait, or coordination. *See Cohen v. Astrue*, 258 F. App'x 20, 26 (7th Cir. 2007) (unpublished decision) ("[Plaintiff] argues that the ALJ erroneously discredited her hearing testimony. The reason given—that her hearing testimony contradicted her contemporaneous reports to physicians and their independent observations—is a legitimate basis for affording little weight to her testimony.").

The ALJ acknowledged that Plaintiff's diabetes was poorly controlled, but he found that the medical record did not support any limitations caused numbness or tingling in her extremities. Per medical exam notes, Plaintiff consistently denied any numbness or tingling, and again, there were no abnormal neurological exams. Similarly, the ALJ concluded there was little evidence that abdominal pain or asthma limited Plaintiff's ability to stand or walk. The medical record revealed no

12

reports abdominal pain or abnormal menses after 2011, and Plaintiff received no significant treatment for her asthma before December 31, 2013, other than periodic colds or infections, or mild flare-ups.

Plaintiff has not offered any medical evidence that was ignored by the ALJ. Plaintiff also has failed to explain how her impairments would result in a more restrictive RFC. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time."). As for Plaintiff's allegation that her ailments caused chronic absenteeism which made her unemployable, "she failed to present any medical evidence linking her [impairments] to the unacceptable level of absenteeism she alleges." *Castile*, 617 F.3d at 927. Furthermore, "none of [Plaintiff's] treating physicians opined that she was incapable of working. *Id.* at 927, 930 ("[B]ased on objective evidence and common sense, the ALJ reasonably concluded that [the plaintiff's] litany of alleged pain and other symptoms were 'not entirely credible' insofar as establishing proof of her inability to work."). The Court therefore concludes that the ALJ's decision was supported by substantial evidence.

13

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision is denied, and the Commissioner's motion for summary judgment [Doc. No. 21] is granted.

**SO ORDERED.**　　　　　　　　　　**ENTERED:**

　

*[signature: Maria Valdez]*

**DATE:　　June 24, 2020**　　　　　_____

　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　**United States Magistrate Judge**